IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 24-1105 &
No. 24-1284 (Consolidated)

MICHAEL SOLONDZ,

Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE FEDERAL AVIATION ADMINISTRATION

BRIEF FOR THE RESPONDENT
FEDERAL AVIATION ADMINISTRATION

Raymond Carver
Attorney, AGC-300

Office of the Chief Counsel
Federal Aviation Administration
800 Independence Ave, SW
Washington, DC 20591
(202) 267-3116 (phone)
(202) 267-5106 (fax)

Attorney for the Respondent

<u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to D.C. Cir. R. 28(a)(1), counsel for Respondent Federal Aviation Administration (FAA) certifies the following:

A. <u>Parties and Amici</u>:

The parties before this Court are the Petitioner, Michael Solondz, and the Respondent, the Federal Aviation Administration (FAA).

B. <u>Ruling Under Review</u>:

Petitioner sought review of an April 10, 2024 letter authored by the Manager of the FAA Aerospace Medical Certification Division denying his request for reconsideration of the FAA's refusal to issue him an Authorization for a Special Issuance First-Class Medical Certificate. D.C. Cir. No. 24-1284. Petitioner also seeks review of a July 9, 2024 final denial by the Federal Air Surgeon denying his request for reconsideration of the FAAs denial of his for an Authorization for a Special Issuance First-Class Medical Certificate. D.C. Cir. No. 24-1105. These two appeals have been consolidated.

C. <u>Related Cases</u>:

Counsel is aware of no related cases currently pending in this

Court or in any other court within the meaning of Cir. R. 28(a)(1)(C).


*s/Raymond Carver*
Raymond Carver
Attorney for Respondent
Dated: November 20, 2024          Federal Aviation Administration

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT REGARDING PERTINENT STATUTES AND
REGULATIONS ....................................................................................... 2

COUNTERSTATEMENT OF THE ISSUE ............................................... 2

STATEMENT OF THE CASE .................................................................. 3

   A. Statutory and Regulatory Background ........................................... 3

   B. Facts and Course of Proceedings Below ........................................ 8

STANDARD OF REVIEW ...................................................................... 16

SUMMARY OF THE ARGUMENT ........................................................ 18

ARGUMENT ........................................................................................... 20

   The Federal Air Surgeon properly exercised her discretion by
   denying Mr. Solondz's request for a special issuance first-class
   medical certificate because he failed to demonstrate to the
   satisfaction of the Federal Air Surgeon that he can perform the
   duties authorized by the first-class medical certificate without
   endangering public safety .................................................................. 20

   A. The Federal Air Surgeon correctly determined that the
   combination of Petitioner's medical conditions create an
   unacceptable risk to aviation safety. .............................................. 22

   B. The Federal Air Surgeon's determination that Mr. Solondz's
   continued use of Remeron creates an unacceptable risk to aviation
   safety was a considered judgment based on objective, scientific
   studies. ............................................................................................ 27

   C. Mr. Solondz failed to establish that an exemption to the FAA's
   medical standards is in the public interest. .................................... 39

CONCLUSION ....................................................................................... 42

CERTIFICATE OF COMPLIANCE ......................................................... 43

CERTIFICATE OF SERVICE ................................................................. 44

# TABLE OF AUTHORITIES

**Statutes**

5 U.S.C. § 706 ...................................................................................... 16

5 U.S.C. § 706(2)(a) ............................................................................ 17

49 U.S.C. § 44701(a)(5) ........................................................................ 3

49 U.S.C. § 44701(c) .............................................................................. 8

49 U.S.C. § 44701(d)(1) ......................................................................... 7

49 U.S.C. § 44701(f) ................................................................ 1, 18, 21, 39

49 U.S.C. § 44703 ................................................................................. 20

49 U.S.C. § 44703(a) .......................................................................... 1, 3

49 U.S.C. § 46110(a) .............................................................................. 2


**Regulations**

14 C.F.R. § 61.3(c) .................................................................................. 3

14 C.F.R. § 61.23(a) ............................................................................... 3

14 C.F.R. § 61.23(a)(1) ........................................................................... 4

14 C.F.R. § 61.23(a)(2) ........................................................................... 4

14 C.F.R. § 61.23(d) ............................................................................... 6

14 C.F.R. § 61.133 .................................................................................. 4

14 C.F.R. § 61.167 .................................................................................. 4

14 C.F.R. § 67.3 ..................................................................................... 4

14 C.F.R. § 67.23(a)(3) .................................................................... 4

14 C.F.R. § 67.101 ........................................................................... 5

14 C.F.R. § 67.103(e) ..................................................................... 13

14 C.F.R. § 67.107(c) ................................................................ 12, 13

14 C.F.R. § 67.109(b) ..................................................................... 13

14 C.F.R. § 67.113(b) ................................................................ 12, 13

14 C.F.R. § 67.113(c) ............................................................ 10, 12, 13

14 C.F.R. § 67.203(e) ..................................................................... 13

14 C.F.R. § 67.207(c) ................................................................ 12, 13

14 C.F.R. § 67.209(b) ..................................................................... 13

14 C.F.R. § 67.213(b) ................................................................ 12, 13

14 C.F.R. § 67.213(c) ................................................................ 12, 13

14 C.F.R. § 67.303(e) ..................................................................... 13

14 C.F.R. § 67.307(c) ................................................................ 12, 13

14 C.F.R. § 67.309(b) ..................................................................... 13

14 C.F.R. § 67.313(b) ................................................................ 12, 13

14 C.F.R. § 67.313(c) ................................................................ 12, 13

14 C.F.R. § 67.401(a) ............................................................ 5, 6, 19

14 C.F.R. § 67.401(c) ........................................................ 22, 26, 34

14 C.F.R. § 67.401(d) ........................................................... 6

14 C.F.R. § 67.401(e) ........................................................... 7

14 C.F.R. § 67.407(a) ...................................................... 1, 12

14 C.F.R. § 67.409(b) ........................................................ 12

14 C.F.R. § 67.413 ............................................................ 15

**Cases**

*Baker v. FAA,*
917 F.2d 318 (7th Cir. 1990) ........................................... 22, 40

*Baltimore Gas & Electric Co. v. Natural Resources Defense Council, Inc.,*
462 U.S. 87 (1983) .............................................................. 32

*BellSouth Corp. v. FCC,*
162 F.3d 1215 (D.C. Cir. 1999) ...................................... 17, 28

*Copley Fund, Inc. v. SEC,*
796 F.3d 131 (D.C. Cir. 2015) ............................................. 17

*Delta Air Lines, Inc. v. United States,*
490 F. Supp. 907 (N.D. Ga. 1980) ................................... 21, 40

*Dickson v. FAA,*
480 F. App'x 263 (D.C. Cir. 2012) .................................. 16, 34

*Erwin v. FAA,*
21 F.4th 154 (D.C. Cir. 2021) ......................................... 36, 37

*FCC v. WNCN Listeners Guild,*
450 U.S. 582 (1981) ........................................................ 40, 41

*Friedman v. FAA,*
890 F.3d 1092 (D.C. Cir. 2018) ..................................... 3, 4, 18

*Holmes v. Helms,*
705 F.2d 343 (9th Cir. 1983) ............................................... 21

*Island Airlines, Inc. v. Civil Aeronautics Board*,
363 F.2d 120, (9th Cir. 1966) ...................................................... 41

*Loper Bright Entertainment v. Raimondo*,
144 S. Ct. 2244 (2024) ................................................................ 21

*Marsh v. Oregon Natural Resources Council*,
490 U.S. 360 (1989) .................................................................... 32

*Motor Vehicle Manufacturers Association of the U.S., Inc. v. State Farm
  Mutual Auto. Ins. Co.*,
463 U.S. 29 (1983) ....................................................... 17, 18, 27

*Rombough v. FAA*,
594 F.2d 893 (2d Cir. 1979) ........................................................ 32

*Schneider v. Kissinger*,
412 F.3d 190 (D.C. Cir. 2005) .................................................... 21

*United Gas Pipe Line Co. v. FERC*,
707 F.2d 1507 (D.C. Cir. 1983) .................................................. 17

*United Steelworkers of America, AFL-CIO-CLC v. Marshall*,
647 F.2d 1189 (D.C. Cir. 1980) .................................................. 32

*WAIT Radio v. FCC*,
459 F.2d 1203 (D.C. Cir. 1972) ........................................... 18, 41

*Wisconsin Power & Light Co. v. FERC*,
363 F.3d 453 (D.C. Cir. 2004) .................................................... 32

*Yetman v. Garvey*,
261 F.3d 664 (7th Cir. 2001) ........................... 17, 22, 27, 28, 37

**Other Authorities**
47 Fed. Reg. 16298, 16301 (Apr. 15, 1982) ................................ 8

## STATEMENT OF JURISDICTION

The FAA issues medical certificates to applicants pursuant to the statutory authority in 49 U.S.C. § 44703(a), which authorizes the FAA to "issue an airman certificate to an individual when the Administrator [of the FAA] finds . . . that individual is qualified for, and physically able to perform the duties related to, the position to be authorized by the certificate," and pursuant to the FAA's medical standards in 14 C.F.R. part 67. The FAA is also authorized to grant exemptions from a regulatory requirement, including the regulations setting forth the medical standards in part 67, if doing so is in the "public interest." 49 U.S.C. § 44701(f). The Administrator's authority to issue or deny a medical certificate, and to exempt an individual from an applicable medical standard, is delegated to the Federal Air Surgeon. 14 C.F.R. § 67.407(a).

This matter is before the Court on review of a final order of the FAA, which, by a letter dated July 9, 2024 and authored by the Federal Air Surgeon, issued an administratively final denial of Mr. Solondz's request for an exemption from the regulations setting forth the standards for a first-class medical certificate in 14 C.F.R. part 67. This

Court has jurisdiction to review a final order of the FAA under 49 U.S.C. § 46110(a) when "a person disclosing a substantial interest" in the order files a petition for review within 60 days. Here, Mr. Solondz filed a timely petition for review with this Court on August 26, 2024.

## STATEMENT REGARDING PERTINENT STATUTES AND REGULATIONS

Pursuant to D.C. Cir. R. 28(a)(5), the statutes and regulations pertinent to this petition for review are set forth in the addenda bound with this brief.

## COUNTERSTATEMENT OF THE ISSUE

Mr. Solondz has a history of generalized anxiety disorder, sleep disorder (insomnia), optic neuritis, obstructive sleep apnea, and use of the medication mirtazapine, or as it is known by its brand name, Remeron, which he takes to treat insomnia and anxiety. As a result of his medical history and diagnoses, Mr. Solondz is disqualified from medical certification under the FAA's medical standards set forth in 14 C.F.R. part 67. Mr. Solondz does not dispute that he is disqualified from medical certification under the FAA's medical standards. Instead, Mr. Solondz's petition before this Court challenges the FAA's discretionary denial of his request for an exemption from the part 67

medical standards that preclude his first-class medical certification.

Accordingly, the issue before this Court is:

Whether the Federal Air Surgeon properly exercised her discretion by denying Mr. Solondz's request for a special issuance first-class medical certificate based on his medical conditions when Mr. Solondz failed to demonstrate to the satisfaction of the Federal Air Surgeon that he can perform the duties authorized by the first-class medical certificate without endangering public safety.

## STATEMENT OF THE CASE

A. Statutory and Regulatory Background

The FAA has broad authority to prescribe regulations and standards governing the "practices, methods, and procedures the Administrator finds necessary for safety in air commerce and national security." 49 U.S.C. § 44701(a)(5). Consistent with this authority, the FAA issues airman certificates to pilots who are "qualified for, and physically able to perform the duties related to [their] position." § 44703(a). To ensure that pilots are physically able to safely perform their duties, the FAA's regulations require a pilot to hold both a medical certificate and a separate pilot certificate in order to operate an aircraft. 14 C.F.R. § 61.3(c); *see also* 14 C.F.R. § 61.23(a); *Friedman v. FAA*, 890 F.3d 1092, 1097 (D.C. Cir 2018) (describing the FAA's requirements that pilots hold one of three classes of medical certificate).

3

The FAA issues three different classes of medical certificates; the class of medical certificate required depends on the type of pilot certificate the pilot holds and the privileges that the pilot wishes to exercise. *See* 14 C.F.R. § 61.23; *see generally* 14 C.F.R. part 67 subparts B, C, and D. A pilot like Mr. Solondz, who holds an airline transport pilot (ATP) certificate, must also hold a first-class airman medical certificate in order to fly for an airline. 14 C.F.R. § 61.23(a)(1). Second- and third-class medical certificates are needed for commercial and private pilot certificates respectively. §§ 61.23(a)(2), (3). Individuals who hold an ATP or commercial pilot certificate, and who hold a first- or second-class medical certificate, may be hired by the public and may fly passengers for compensation. 14 C.F.R. §§ 61.133, 61.167; *see also Friedman*, 890 F.3d at 1994 (noting that the "Federal Air Surgeon . . . has adopted more rigorous medical standards for pilots who fly commercially.").

The FAA's regulations in 14 C.F.R. part 67 dictate the standards that an individual must meet to be medically qualified to perform pilot duties. *See* 14 C.F.R. § 67.3. There are specific mental, neurologic, and cardiovascular standards, among others, for each class of medical

certificate, *see generally* 14 C.F.R. part 67, subparts B, C, D, and an individual must meet all of the medical standards for the class of certificate desired before he or she may be issued a medical certificate (also called an "unrestricted" medical certificate in contrast with a special issuance medical certificate). *See, e.g.*, 14 C.F.R. § 67.101 and 14 C.F.R. part 67, subpart B (stating eligibility requirements for a first-class medical certificate).[1]

When a pilot does not meet the part 67 medical standards for an unrestricted medical certificate, the Federal Air Surgeon may, in her discretion, grant an exemption to the requirements of part 67 by issuing an Authorization for Special Issuance of a Medical Certificate (often referred to as a "special issuance medical certificate") if the pilot "shows to the satisfaction of the Federal Air Surgeon that the duties authorized by the class of medical certificate applied for can be performed without endangering public safety during the period in which the Authorization would be in force." 14 C.F.R. § 67.401(a).[2] In granting a special issuance

---

[1] These regulations prescribe the standards for first-class medical certificates. Similar standards for second and third-class certificates are found in Subparts C & D of part 67.

[2] A first-class medical certificate is generally valid for airline transport pilot privileges for six months for pilots age 40 or older. *See*

certificate, the Federal Air Surgeon may consider a pilot's operational experience and any medical facts that may affect the ability of that pilot to perform their duties, including the "combined effect on the person" of their failure to meet more than one of the medical requirements of part 67, and the prognosis of the pilot "derived from professional consideration of all available information" regarding the pilot. 14 C.F.R. § 67.401(c).

In contrast to an unrestricted medical certificate, a special issuance medical certificate can contain conditions and limitations on its use. The FAA may limit the duration of the certificate; impose any operational limitation needed for safety; impose functional limitations on certain classes of certificates; or condition the grant of a new certificate on the results of subsequent medical tests, examinations, or evaluations. 14 C.F.R. § 67.401(d). The Federal Air Surgeon may also authorize a special medical flight test, practical test, or other medical evaluation for the purpose of establishing an individual's eligibility for a special issuance. 14 C.F.R. § 67.401(a).

---

14 C.F.R. § 61.23(d). Accordingly, six months is the applicable time period in this matter.

In deciding whether to grant a special issuance medical certificate, the Federal Air Surgeon must balance the needs and desires of the individual applicant against the risks to society; thus, the factors the Federal Air Surgeon must consider when determining whether granting a special issuance is in the public interest will vary depending on the class of medical certificate for which the individual is applying. *See* 14 C.F.R. § 67.401(e). Applicants for special issuance first- and second-class certificates are reviewed with heightened scrutiny, given the greater risk to the flying public involved. As the FAA has explained previously:

> [A] commercial or airline transport pilot, in virtually every circumstance, has the life or property of another individual in his or her care. For this reason, if there is a reasonable risk that such a pilot may experience an incapacitating medical event, even though that risk may be relatively small, the Federal Air Surgeon must consider the degree of protection to which the public is entitled in commercial operations.

47 Fed. Reg. 16298, 16301 (Apr. 15, 1982). The heightened scrutiny of these pilots, who will be authorized to fly for commercial air carriers, is consistent with FAA's statutory responsibility to consider, among other things, "the duty of an air carrier to provide service with the highest possible degree of safety in the public interest." 49 U.S.C. § 44701(d)(1);

7

*see also* 49 U.S.C. § 44701(c) (mandating the FAA carry out its responsibilities "in a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation").

B. Facts and Course of Proceedings Below

Mr. Solondz holds an airline transport pilot certificate, which permits him to fly for commercial air carriers, as long as he also has the appropriate medical certification. R. 14. In 2001, Mr. Solondz was diagnosed with atrial fibrillation and in 2002 received his first authorization for special issuance of a medical certificate. R. 1525. However, when it was determined that he once again met the FAA's standards for medical certification, he began receiving unrestricted medical certificates on October 20, 2004. R. 1472.

On March 20, 2019, Mr. Solondz submitted an application for a first-class airman medical certificate. R. 714. On the application, he reported that he experienced anxiety and stress due to a death in the family and was prescribed medication during a medical leave of absence from his employment. R. 716. Mr. Solondz subsequently provided additional information, including an exercise stress test and cardiology records, and submitted another application for a medical certificate on

September 24, 2019. R. 738, 762-63. The FAA ultimately issued

Mr. Solondz a first-class airman medical certificate on March 12, 2020.

R. 1206.

In August 2021, Mr. Solondz submitted additional medical records

with a letter stating that he had been prescribed a new medication,

Remeron, and requested that he be issued an airman medical certificate

or special issuance medical certificate. R. 209. The records showed that

Mr. Solondz was prescribed Remeron by Linda Shaw, Clinical Nurse

Specialist and Nurse Practitioner, "for sleep" and treatment of his

insomnia and anxiety. R. 164. Mr. Solondz subsequently provided

additional information, including a neurocognitive evaluation from

Dr. Chuck Denison and a psychiatric evaluation by Dr. Gwen Levitt. R.

167, 199. Dr. Levitt's report noted that Mr. Solondz had developed optic

neuritis[3] in January 2020 and had a history of malignant melanoma,

neither of which had previously been reported to the FAA. R. 170-71.

---

[3] Optic neuritis is an inflammatory condition that degrades vision in one or both eyes. *See* Christian P Guier and Thomas J. Stokkermans, Optic Neuritis, National Institute of Health, https://www.ncbi.nlm.nih.gov/books/NBK557853/ (last updated March 26, 2023).

9

On September 28, 2021, the FAA advised Mr. Solondz that based on a review of his application, physical exam, and subsequent medical records, Mr. Solondz did not meet the medical standards in 14 C.F.R. § 67.113(c) based on his history of anxiety, sleep disturbance, and use of the medication Remeron. R. 1154.

On January 18, 2022, Mr. Solondz submitted a new application for medical certification. R. 286-87. On February 11, 2022, the FAA's Aerospace Medical Certification Division denied Mr. Solondz's application due to his history of anxiety, sleep disorder (insomnia), and use of mirtazapine (Remeron). R. 806. By letter dated March 22, 2022, Mr. Solondz, through counsel, requested review by the Federal Air Surgeon. R. 453. On July 8, 2022, the Federal Air Surgeon denied Mr. Solondz's application for an unrestricted airman medical certificate and also denied him an authorization for special issuance.[4] R. 456. In her denial, the Federal Air Surgeon noted that, "As long as your generalized anxiety disorder and sleep disorder (insomnia) are being treated with the medication mirtazapine (Remeron), we can offer you no

---

[4] This previous denial of Mr. Solondz's application for an authorization for a special issuance is not at issue in the petition for review before the court.

10

encouragement for a favorable review of your application." R. 456. The Federal Air Surgeon further noted that even if Mr. Solondz discontinued his use of Remeron, the FAA would still need additional information related to his history of anxiety, insomnia, optic neuritis, and malignant melanoma prior to additional consideration for a medical certificate. R. 456-57.

On February 17, 2023, Mr. Solondz submitted a new application for airman medical certification, indicating that he continued to use Remeron daily. R. 16-18. On April 14, 2023, the Manager of the FAA's Aerospace Medical Certification Division denied Mr. Solondz's February 17, 2023, medical application due to his history of generalized anxiety disorder, obstructive sleep apnea treated with continuous positive airway pressure, atrial fibrillation, and use of the aeromedically

11

unacceptable medication Remeron.[5] R. 109. Mr. Solondz subsequently requested reconsideration of this decision by the Federal Air Surgeon. R. 97. Mr. Solondz submitted additional medical documentation, including a July 31, 2023, eye examination. R. 74-87. On November 20, 2023, the FAA sent a letter to Mr. Solondz reiterating that for further consideration he would need to discontinue use of Remeron and provide data regarding his treatment for sleep apnea and a current psychiatric evaluation; he did not provide this evaluation. R. 71.

On April 10, 2024, the FAA's Aerospace Medical Certification Division erroneously issued a letter stating that it was denying Mr. Solondz's request for reconsideration by the Federal Air Surgeon due to his history of generalized anxiety disorder, obstructive sleep apnea treated with continuous positive airway pressure, atrial

---

[5] The April 14, 2023 denial of Mr. Solondz's application is based on the medical standards in 14 C.F.R. §§ 67.107(c), 67.207(c), 67.307(c), 67.113(b) and (c), 67.213(b) and (c), and 67.313(b) and (c). Under 14 C.F.R. § 67.409(b), a denial by the Manager of the Aerospace Medical Certification Division is considered a denial by the Administrator, except where the applicant does not meet the standards in, *inter alia*, 14 C.F.R. §§ 67.113(b) and (c), 213(b) and (c), and 67.313(b) and (c). A non-final denial by the Aerospace Medical Certification Division is subject to reconsideration by the Federal Air Surgeon, who is authorized to issue an administratively final denial. 14 C.F.R. § 67.407(a). Here, Mr. Solondz requested said reconsideration.

fibrillation, and use of the aeromedically unacceptable medication Remeron. R. 38. On May 2, 2024, Mr. Solondz filed a petition for review of the FAA Aerospace Medical Certification Division's April 10, 2024, denial letter. (Appeal No. 24-1105).

On July 9, 2024, The Federal Air Surgeon issued a final denial letter denying Mr. Solondz's request for reconsideration. R. 22. The Federal Air Surgeon determined that Mr. Solondz was not qualified for an unrestricted medical certificate under the medical standards set forth in 14 C.F.R. §§ 67.103(e), 67.203(e), 67.303(e), 67.107(c), 67.207(c), 67.307(c), 67.109(b), 67.209(b), 67.309(b), 67.113(b) and (c), 67.213(b) and (c), and 67.313(b) and (c) due to his history of generalized anxiety disorder, obstructive sleep apnea treated with positive airway pressure, atrial fibrillation, optic neuritis, and use of Remeron, "a medication that the FAA has found to be disqualifying due to its sedating effects." R. 26.

Regarding a special issuance, the Federal Air Surgeon found, after a review of Mr. Solondz's medical file and relevant medical information and studies, that Mr. Solondz could not exercise the privileges of any class of airman medical certificate without endangering public safety, based on the particular combination of Mr. Solondz's conditions. R. 26.

The Federal Air Surgeon explained that Remeron (mirtazapine) is known to have "a significant side-effect of sedation or somnolence," citing the United States Food and Drug Administration prescribing information stating that somnolence is reported in over half of those prescribed the medication for six weeks or more. R. 26. The Federal Air Surgeon also referenced a study highlighting the sedating effects of mirtazapine on drivers and addressed the sole article referenced by Mr. Solondz in his letters to the FAA. R. 26.

Regarding Mr. Solondz's conditions of optic neuritis and melanoma, the Federal Air Surgeon determined that she was unable to assure Mr. Solondz's safe operation of an aircraft without further review of all the pertinent clinical documentation and test results, as well as review of ongoing regular evaluations. R. 27. The Federal Air Surgeon discussed the specific risk to aviation safety created by optic neuritis as well as Mr. Solondz's increased risk of future health issues due to his diagnosis. R. 27. The Federal Air Surgeon further noted that even if Mr. Solondz were to discontinue the use of Remeron, he would still need to provide all medical records pertaining to his diagnoses of optic neuritis and melanoma. R. 27 (noting records that would be

14

required from Mr. Solondz). Due to the lack of this information and the inability of the Federal Air Surgeon to make an informed judgment regarding the potential risks of issuing Mr. Solondz a special issuance certificate, the Federal Air Surgeon also declined to grant Mr. Solondz a special issuance authorization on this basis. R. 27; *see also* 14 C.F.R. § 67.413 (the FAA may request additional information from applicants and may deny the issuance of medical certificates based on a failure to provide that information).

Finally, the Federal Air Surgeon noted that Mr. Solondz's obstructive sleep apnea poses a risk to aviation safety and is also more complex than typical obstructive sleep apnea diagnoses. R. 27. The Federal Air Surgeon thus noted that Mr. Solondz would need to submit additional information regarding his sleep apnea for consideration of special issuance certification. R. 27-28.

15

On August 26, 2024, Mr. Solondz filed a petition for review of the July 9, 2024, final denial by the Federal Air Surgeon (Appeal No. 24-1284). [6]

## STANDARD OF REVIEW

Per the Administrative Procedure Act, a reviewing court must set aside agency action it finds to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(a); *Dickson v. FAA*, 480 F. App'x 263 (D.C. Cir. 2012) ("Under the Administrative Procedures Act ('APA'), a decision of the FAA must be set aside or reversed only if it is 'arbitrary, capricious, an abuse of

---

[6] The April 10, 2024, letter from the Manger of the FAA's Aerospace Medical Certification Division, from which Mr. Solondz initially filed a petition for review, was not a final decision of the FAA, as the authority to deny requests for Authorization for Special Issuance of a Medical Certificate is delegated to the Federal Air Surgeon under 14 C.F.R. § 67.407(a)(2). Any final denial of Mr. Solondz's request should have been (and eventually was) issued by the Federal Air Surgeon. The Federal Air Surgeon's July 9, 2024, final denial reaches substantially similar conclusions as those in the April 10, 2024 letter, but regardless, any conclusions in the April 10, 2024, letter were subject to reconsideration by the Federal Air Surgeon and were not final decisions of the FAA. Because the petitions for review have been consolidated and the Federal Air Surgeon's July 9, 2024, final denial is before the Court, this Brief will solely address Mr. Solondz's Petition for Review of the July 9, 2024 final denial of an authorization for special issuance.

discretion, or otherwise not in accordance with law.'") (citing 5 U.S.C.

§ 706(2)(a)).

In conducting this review, courts examine the agency's denial "to ensure that it was based on a consideration of the relevant factors and articulated a rational connection between the facts found and the choices made." *Yetman v. Garvey*, 261 F.3d 664, 669 (7th Cir. 2001) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). This review is deferential; a court may not substitute its judgment for that of the agency. *State Farm*, 463 U.S. at 43. Specific to regulatory exemptions, this court has held that it will not overturn an agency's denial of an exemption request unless "the agency's reasons are so insubstantial as to render that denial an abuse of discretion." *Copley Fund, Inc. v. SEC*, 796 F.3d 131, 135 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 913 (2016); *see also BellSouth Corp. v. FCC*, 162 F.3d 1215, 1222 (D.C. Cir. 1999); *United Gas Pipe Line Co. v. FERC*, 707 F.2d 1507, 1511 (D.C. Cir. 1983). Thus, "judicial review of an agency's denial of a waiver application is tightly contained," *United Gas Pipe Line Co.*, 707 F.2d at 1511, and the party seeking the exemption bears a "heavy burden." *E.g., WAIT Radio v. FCC*, 459 F.2d

17

1203, 1207 (D.C. Cir. 1972). This Court has stated with respect to FAA

denials of special issuance medical certificates that it will "look to see

whether the agency has 'examine[d] the relevant data and articulate[d]

a satisfactory explanation for its action,' which may not neglect any

'important aspect of the problem,' 'run[] counter to the evidence,' or be

'so implausible that it could not be ascribed to a difference in view or

the product of agency expertise.'" *Friedman*, 890 F.3d at 1097 (quoting

*State Farm*, 463 U.S. at 43).

## SUMMARY OF THE ARGUMENT

Mr. Solondz does not meet the FAA's medical standards in

14 C.F.R. part 67 due to his history of generalized anxiety disorder,

obstructive sleep apnea, atrial fibrillation, optic neuritis, and the use of

the medication Remeron. By requesting a special issuance first-class

medical certificate, which would authorize him to fly for commercial air

carriers, Mr. Solondz seeks an exemption from safety regulations that

preclude his certification. By statute, the FAA has the discretion to

exempt Mr. Solondz from an applicable medical regulation if doing so

"is in the public interest," 49 U.S.C. § 44701(f), and may only issue him

a special issuance first-class medical certificate if he demonstrates, to

18

the satisfaction of the Federal Air Surgeon, that he can perform the

duties of an airline transport pilot without endangering public safety.

14 C.F.R. § 67.401(a).

Mr. Solondz has not met this burden, and the Federal Air Surgeon

has determined that she should not exercise her discretion to grant

Mr. Solondz an exemption from the FAA's medical standards because of

the unacceptable risk to aviation safety posed by his combination of

medical issues. Mr. Solondz continues to take Remeron to treat his

insomnia and anxiety. This medication has been shown to cause

somnolence, *i.e.*, drowsiness or a strong desire to fall asleep, in a

significant portion of patients, which creates an obvious risk to aviation

safety. In addition, Mr. Solondz has a history of optic neuritis,

melanoma, and obstructive sleep apnea that also pose a risk to aviation

safety. Absent additional information from Mr. Solondz, the Federal Air

Surgeon is unable to conclude that Mr. Solondz can safely exercise the

privileges of a special issuance authorization. The Federal Air Surgeon's

decision is based on a consideration of all relevant factors and

articulates a rational connection between the facts before her and her

decision to deny Mr. Solondz a special issuance medical certificate.

19

Because Mr. Solondz has failed to demonstrate to the Federal Air Surgeon that he can perform the duties of an airline transport pilot operating passenger-carrying flights without endangering the public safety, the FAA did not abuse its discretion by denying his request for an exemption from the FAA's medical standards.

## ARGUMENT

The Federal Air Surgeon properly exercised her discretion by denying Mr. Solondz's request for a special issuance first-class medical certificate because he failed to demonstrate to the satisfaction of the Federal Air Surgeon that he can perform the duties authorized by the first-class medical certificate without endangering public safety.

Pursuant to 49 U.S.C. § 44703, the FAA may only issue a medical certificate to Mr. Solondz if it "finds, after investigation, that the individual is . . . physically able to perform the duties related to, the position to be authorized by the certificate." The Federal Air Surgeon's denial of Mr. Solondz's request for a special issuance first-class medical certificate is an appropriate exercise of her discretion based on

Mr. Solondz's medical conditions. 49 U.S.C. § 44701(f).[7] The FAA may only issue a special issuance medical certificate to Mr. Solondz if doing so "is in the public interest." 49 U.S.C. § 44701(f).[8] The FAA may not grant an exemption that is "merely in the private, economic interest of an individual airman." *Delta Air Lines, Inc. v. United States*, 490 F. Supp. 907, 918 (N.D. Ga. 1980). The Federal Air Surgeon's client is the public, *id.*, and, as such, public safety must be the dominant and

---

[7] Mr. Solondz offhandedly questions the FAA's authority to issue airman medical certificates while acknowledging that the issues presented in this appeal do not require resolution of this issue. Pet'r's Br. at 19-20. This Court should not consider arguments not developed in a petitioner's opening brief, *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005). Nevertheless, this argument is without merit. While Petitioner is correct that the Supreme Court recently overturned *Chevron* deference in *Loper Bright Entertainment v. Raimondo*, 144 S. Ct. 2244 (2024), the FAA's authority to issue airman certificates does not rely on *Chevron* deference. Instead, the FAA's authority to issue airman certificates is explicitly set forth in 49 U.S.C. § 44703; ascertaining this authority does not require interpretation of the statute or deference to the FAA. Other than a conclusory aside that the FAA's creation of Airman Medical Certificate is "no-longer under the protected veil of discretionary authority," Mr. Solondz fails to discuss § 44703, much less provide any argument as to how the FAA's issuance of airman medical certificates exceeds its explicit statutory authority.

[8] The statute permitting the FAA to grant exemptions, 49 U.S.C. § 44701(f), uses the term "public interest" and the FAA's implementing regulation in 14 C.F.R. § 67.401 uses the term "public safety." The terms are synonymous. *Holmes v. Helms*, 705 F.2d 343, 346 (9th Cir. 1983).

controlling consideration. *See Baker v. FAA*, 917 F.2d 318, 319 (7th Cir. 1990). Mr. Solondz, as the party seeking the exemption from the FAA's first-class medical standards, bears the "heavy burden" of showing that his circumstances justify exempting him from those standards. *Yetman*, 261 F.3d at 669; s*ee also Baker*, 917 F.2d at 319. Because Mr. Solondz has failed to show, to the satisfaction of the Federal Air Surgeon, that he can perform the duties authorized by a first-class airman medical certificate without a risk to public safety, the Federal Air Surgeon properly denied Mr. Solondz's request for an exemption.

A. <u>The Federal Air Surgeon correctly determined that the combination of Petitioner's medical conditions create an unacceptable risk to aviation safety.</u>

The Federal Air Surgeon based her denial of Mr. Solondz's request for an exemption to the FAA's medical standards on the combination of Mr. Solondz's medical conditions, including his use of the medication Remeron, history of optic neuritis, diagnosis of malignant melanoma, and history of obstructive sleep apnea. In doing so, the Federal Air Surgeon made a considered evaluation of Mr. Solondz's complete medical condition and determined that a special issuance was not in the interest of aviation safety. R. 26; *see* 14 C.F.R. § 67.401(c) (stating that

the Federal Air Surgeon may consider "the combined effect on the person of failure to meet more than one requirement of this part" and "[t]he prognosis derived from professional consideration of all available information regarding the person.")

The Federal Air Surgeon determined that she was unable to ensure that Mr. Solondz would not endanger aviation safety based on his use of Remeron due to its significant side-effect of sedation or somnolence. As discussed further below, the Federal Air Surgeon reviewed the applicable Federal Drug Administration prescribing information as well as scientific studies on the known side-effects of Remeron: sedation and somnolence. The Federal Air Surgeon made a rational conclusion that the extreme risk of sedation is not an acceptable risk for a pilot flying members of the traveling public for compensation.

With regard to Mr. Solondz's optic neuritis, the Federal Air Surgeon explained that, according to a study in a peer reviewed journal, there was a 25 to 50% risk of individuals with optic neuritis developing multiple sclerosis. As a result of this ongoing risk, the Federal Air Surgeon stated that the FAA would need to review all of Mr. Solondz's

pertinent clinical documentation and test results, as well as ongoing regular evaluations that screen for progression or relapse. R. 27. Given the scientific data indicating potential progression or relapse, the Federal Air Surgeon had a rational basis for requiring this additional information.

Regarding Mr. Solondz's history of malignant melanoma, the Federal Air Surgeon noted that, in the event Mr. Solondz discontinued his use of Remeron, the FAA would need a current MRI scan of Mr. Solondz's brain and a current report from his treating physician about the melanoma. R. 27. Mr. Solondz argues that this testing is not necessary because one of his physicians opined that it was melanoma in situ rather than malignant melanoma. Pet'r's Br. at 46-47; *see also* R. 237-39. However, Mr. Solondz's medical record also includes diagnoses of malignant melanoma. *See* R. 410 (psychiatric evaluation noting that his medical records include a "history of malignant melanoma"); R. 158-159 (medical records indicating "history of malignant melanoma"). The Federal Air Surgeon expressly noted this conflicting information and explained that malignant melanoma, "if this condition is present," carries a higher risk of spread, including to the

24

brain. R. 27. Given the conflicting information in Mr. Solondz's medical file, and the Federal Air Surgeon's obligation to protect the national air space, it was well within the FAA's discretion to request Mr. Solondz's complete medical records related to his melanoma and a current examination and MRI scan before a special issuance could be issued.

Finally, the Federal Air Surgeon noted that sleep apnea poses a risk to the aviation environment, but appropriate treatment can mitigate this risk. R. 27. The Federal Air Surgeon found that Mr. Solondz's particular sleep condition was more complex because it included a diagnosis of central apnea which was improved with treatment. R. 28. Therefore, to be considered for special issuance medical certification Mr. Solondz needed to provide information demonstrating his treatment. R. 28. Again, the Federal Air Surgeon considered Mr. Solondz's particular medical condition and communicated what would be needed in order for Mr. Solondz to show he would not pose a risk to aviation safety.

The Federal Air Surgeon has determined that all of the above additional information is necessary to ascertain how likely it is that Mr. Solondz's conditions would impact aviation safety. Additional

information is necessary to comprehensively assess the risk

Mr. Solondz's medical conditions pose to the flying public and to

consider whether there are adequate mitigating strategies that address

his complete medical status that may enable him to safely perform ATP

duties permitted by the holder of a first-class medical certificate. Absent

this complete picture, it is not in the public interest to grant

Mr. Solondz an exemption to the FAA's medical regulation, because it is

not clear from the available information that he can perform the duties

authorized by a first-class certificate without endangering public safety.

The Federal Air Surgeon has assessed Mr. Solondz's multiple

medical conditions which preclude airman medical certification and

determined that due to the combination of those conditions, as well as a

lack of all necessary information, it would not be in the public interest

to exercise her discretion to grant him an exemption from the FAA's

medical standards. The Federal Air Surgeon's final denial in this

matter is appropriately based on "the combined effect on the person of

failure to meet more than one requirement of this part." 14 C.F.R.

§ 67.401(c). While Mr. Solondz nitpicks the Federal Air Surgeon's

assessment of each of his individual conditions, he presents no

26

arguments regarding the federal air surgeon's holistic analysis or medical evidence regarding his holistic medical condition—taking into account the combined risks of his varied medical conditions—to the contrary. Regardless, this Court should uphold the Federal Air Surgeon's decision, which is based "on a consideration of the relevant factors" and which "articulate[s] a rational connection between the facts found and the choices made." *Yetman*, 261 F.3d at 669 (citing *State Farm*, 463 U.S. at 43).

B. <u>The Federal Air Surgeon's determination that Mr. Solondz's continued use of Remeron creates an unacceptable risk to aviation safety was a considered judgment based on objective, scientific studies.</u>

    *1. The Federal Air Surgeon made a rational determination the Remeron's risk of sedative effects creates an unacceptable risk to aviation safety.*

The Federal Air Surgeon has determined that Remeron, a medication that Petitioner takes in part to help him sleep, R. 164, poses an unacceptable risk to aviation safety due to its extreme risk of sedative effects. The Federal Air Surgeon expressly relied on the FDA prescribing information for Remeron and scientific studies regarding the possible side effects of the medication, which includes a substantial risk of "sedation or somnolence." R. 26.

27

In her letter to Mr. Solondz, the Federal Air Surgeon expressly review the applicable scientific information regarding Remeron and its known sedative effect and specifically address the weight she placed on certain information. R. 26. In doing so, the Federal Air Surgeon considered the relevant factors and articulated a rational connection between the facts before her and her ultimate denial of an exemption to Mr. Solondz. *See Yetman*, 261 F.3d at 669; *see also BellSouth Corp.*, 162 F.3d at 1224 ("[T]he agency is not required to author an essay for the disposition of each application. It suffices, in the usual case, that we can discern the why and wherefore.").

The 2021 FDA prescribing information for Remeron, which was reviewed by the Federal Air Surgeon, includes the following warning:

> Somnolence: May impair judgment, thinking and/or motor skills. Use with caution when engaging in activities requiring alertness, such as driving or operating machinery.

R. 1691. This prescribing information further explains that in controlled studies somnolence was reported in a staggering 54% of patients treated with Remeron. R. 1696. It further states that prescribers should inform patients that:

> REMERON/REMERONSolTab may impair judgment, thinking, and particularly, motor skills, because of its

28

> prominent sedative effect. Caution patients about performing activities requiring mental alertness, such as operating hazardous machinery or operating a motor vehicle, until they are reasonably certain that REMERON/REMERONSolTab therapy does not adversely affect their ability to engage in such activities.

R. 1711. Operating an aircraft with passengers aboard, which

Mr. Solondz seeks to do by obtaining a special issuance first-class

medical certificate, is of course an activity that requires the utmost

alertness, judgment, thinking, and motor skills.

The Federal Air Surgeon also cited a 1998 study that assessed

individuals' driving performance while using Remeron. R. 26, 1752 (J.G.

Ramakers, *Effects of Nocturnal Doses of Mirtazapine and Mianserin on*

*Sleep and on Daytime Psychomotor and Driving Performance in Young,*

*Healthy Volunteers,* Hum. Psychopharmacol. Clin. Exp. 13, S87-S97

(1998)). The Federal Air Surgeon noted that the study reported poorer

performance with keeping lane position after 16 days of treatment, a

29

finding with obvious relevance to a pilot's ability to safely operate an aircraft. R. 26, 1756.[9]

The Federal Air Surgeon also specifically addressed an article cited by Mr. Solondz's counsel. R. 24, 1737 (Siegfried Kasper et al., *A Risk-Benefit Assessment of Mirtazapine in the Treatment of Depression* (1997)) ("the Kasper article"). The Kasper article notes that while one study found that 55.9% of patients experienced sedation-related symptoms, other studies showed that only 14.8% experienced the same symptoms. R. 1745. The article posits that a "possible explanation for this paradoxical result may lie in the pharmacological profile of mirtazapine . . . it may be speculated that the intrinsic noradrenergic neurotransmission. . . resulting in a reduced incidence of sedation-

---

[9] Additional studies in the record further highlight the risks posed by mirtazapine. A 2005 study found that in patients who were provided an evening dose of mirtazapine their driving performance was "significantly impaired," although the impairment decreased after repeated dosing. R. 1765, 1769 (Marleen Wingen et al., *Actual Driving Performance and Psychomotor Function in Healthy Subjects After Acute and Subchronic Treatment with Escitalopram, Mirtazapine, and Placebo: A Crossover Trial* (2005)). A 2024 study found that mirtazapine caused "significant impairment" in driving performance after the first administration. R. 1773, 1780 (Michele Fornaro et at., *Residual effects of medications for sleep disorders on driving performance: A systematic review and network meta-analysis of randomized control trials*, (2024)).

30

related symptoms with the lower limit of the recommended dosage range." R. 1745. After reviewing the article, the Federal Air Surgeon noted that the article "theorizes, but does not prove" that the sedating effects may be less when Remeron is used in higher therapeutic doses. R. 26.

The medical information in the record demonstrates that Remeron carries with it a significant risk of sedation and impairment of alertness, judgment, thinking, and motor skills, all of which are critical when operating an aircraft. Although the Kasper article cited by Mr. Solondz theorizes that the risk of somnolence may be reduced at higher doses, a result it described as "paradoxical," the Federal Air Surgeon has instead chosen to rely on the FDA prescribing information and medical studies. R. 26. The Federal Air Surgeon's decision is rational and appropriate, and this Court should not seek to reweigh the evidence in the record. R. 26-27. The Supreme Court has explained that "when specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378

31

(1989); accord *Wis. Power & Light Co. v. FERC*, 363 F.3d 453, 464 (D.C. Cir. 2004). In matters such as this involving potentially conflicting scientific evidence and opinions, the court "must not second-guess the particular way the agency chooses to weigh the conflicting evidence or resolve the dispute." *See United Steelworkers of Am., AFL-CIO-CLC v. Marshall*, 647 F.2d 1189, 1263 (D.C. Cir. 1980). "When examining this kind of scientific determination, as opposed to simple findings of fact, a reviewing court must generally be at its most deferential." *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983); *see also Rombough v. FAA*, 594 F.2d 893, 895 (2d Cir. 1979) (noting the "technical, medical area" of FAA exemptions "is one particularly apt for judicial deference").

Making a determination regarding aeromedical safety in light of the risks raised by medical studies, is within the particular competence of the Federal Air Surgeon. This court should not substitute its own judgment for that of the Federal Air Surgeon in terms of how to weigh the medical evidence or resolve a dispute in the level of acceptable aeromedical risk to aviation safety. *See United Steelworkers of America, AFL-CIO-CLC*, 647 F.2d at 1263.

Mr. Solondz acknowledges that this Court cannot substitute its judgment for that of the FAA. Pet'r's Br. at 17. However, he then proceeds to explain how a different reading of the studies in the record could lead a decisionmaker to a different conclusion. Pet'r's Br. at 37-39. Determinations as to matters of aeromedical safety are uniquely within the institutional competence of the FAA and the particular expertise of the Federal Air Surgeon, and neither Mr. Solondz's nor this Court's judgment should be substituted for that of the Federal Air Surgeon. The court should decline Mr. Solondz's attempts to reweigh the medical evidence contrary to the judgment of the Federal Air Surgeon.

2. *Mr. Solondz's arguments regarding the use of Remeron are without merit.*

a. *Mr. Solondz's asserted lack of side effects does not negate the Federal Air Surgeon's rational findings related to the risk arising from the use of Remeron.*

In considering Mr. Solondz's request for reconsideration of his application for a special issuance authorization, the Federal Air Surgeon based her denial on her review of Mr. Solondz's "medical file and the combination of conditions which you present." R. 26. Mr. Solondz nevertheless argues that regardless of the Federal Air Surgeon's substantive determination regarding the risks posed by

33

Remeron, she erred by failing to consider Mr. Solondz's individual medical records related to his use of the medication. Pet'r's Br. at 25-27.

Under 14 C.F.R. § 67.401(c), the Federal Air Surgeon "*may* consider . . . any medical facts that may affect the ability of the person to perform airman duties." Although Mr. Solondz argues that the FAA was required to consider all of his individual medical records related to his use of the medication, this Court has found that the applicable regulation simply states that the Federal Air Surgeon *may* consider the information. *See Dickson*, 480 F. App'x at 268 ("although Dickson claims that 'the FAA *must* consider any medical facts that may affect [his] ability to perform [his flight] duties', he fails to provide any citation to support his contention . . . . the controlling regulation clearly states otherwise.") (alterations in original). Accordingly, even if the Federal Air Surgeon did not explicitly consider Mr. Solondz's side effects from Remeron, her denial of an exemption would be permissible under the FAA's regulations.

However, Mr. Solondz's claim that the Federal Air Surgeon simply ignored his personal medical history is contrary to the record. The Federal Air Surgeon's July 9, 2024 letter makes clear that the Federal

34

Air Surgeon fully considered Mr. Solondz's request, each of his medical conditions and their associated records and history, and the available scientific information. *See* R. 22-26. The Federal Air Surgeon acknowledged that Mr. Solondz's medical records appear to indicate that Mr. Solondz self-reports to his medical providers that he does well on Remeron, which he takes specifically for aid in sleeping. For example, Linda Shaw, Clinical Nurse Specialist and Nurse Practitioner, who is Mr. Solondz's prescriber of Remeron, states that Mr. Solondz "reported that he was doing well on Remeron 45 mg. one tablet at night for sleep." R. 164. His treating psychiatrist Dr. Alan Nelson states in conclusory fashion that Mr. Solondz has "responded well" to Remeron and provides his opinion that "I see the medication as very helpful without any cognitive impairment or significant side effects." R. 166. Dr. Gwen Levitt, a psychiatrist to whom Mr. Solondz was referred to by his attorney, notes that Mr. Solondz takes Remeron "for anxiety and insomnia," R. 167, and that he has been prescribed "Remeron 30mg and 15mg 'for sleep.'" R. 171.

The Federal Air Surgeon expressly considered Mr. Solondz's records, but in making her determination in the interest of public

safety, she was also required to consider objective sources regarding the
risks associated with the medication. While it is encouraging that
Mr. Solondz has not reported sedative side effects from Remeron, this is
not conclusive regarding the possible impacts to alertness, judgment,
thinking, and motor skills seen in multiple objective studies,
particularly given the fact that Mr. Solondz explicitly takes Remeron to
help him sleep, *i.e.,* for its sedative effects. The Federal Air Surgeon
rationally weighed the evidence and determined that Mr. Solondz's self-
reports, and his doctor's conclusions based on those reports, were not
sufficient to negate the extreme risk that over half of the patients
treated with Remeron experience somnolence.

Mr. Solondz's reliance on *Erwin v. FAA* is misplaced, as the
Federal Air Surgeon in this case has explicitly considered Mr. Solondz's
reconsideration request and the evidence he provided. 21 F.4th 154
(D.C. Cir. 2021). In *Erwin*, the court found that the Federal Air Surgeon
did not adequately explain his refusal to reverse the withdrawal of a
special issuance authorization where Erwin had presented medical
evidence supporting his position and the Federal Air Surgeon did not
provide any explanation for his action but instead stated only that

36

Erwin's "additional information and documentation [was] not sufficient to reverse the [withdrawal]." *Id.* at 161-62.

Here, the Federal Air Surgeon has provided a thorough and rational explanation for her denial of Mr. Solondz's request for an exemption from the FAA's medical standards. The Federal Air Surgeon reviewed and discussed Mr. Solondz's relevant medical history, specifically referenced pertinent FDA prescribing information, and discussed relevant medical studies, including a study presented by Mr. Solondz's counsel. *Contra id.* at 161 (finding that the agency acted arbitrarily and capriciously when it ignored the petitioner's evidence). Because the FAA's denial of an authorization for special issuance articulated a rational connection between the facts found and the denial, Mr. Solondz has failed to meet his burden to show that the FAA abused its discretion by failing to adequately explain its decision. *See Yetman*, 261 F.3d at 669.[10]

---

[10] Even where the FAA failed to adequately explain its action in *Erwin*, the court declined to set aside the FAA's order, noting that the proper remedy was "remand to the FAA for it to consider the evidence Erwin provided and to make explicit the 'why and wherefore' of its action." 21 F.4th at 162 (quoting *BellSouth Corp.*, 162 F.3d at 1224).

      *b.  The Federal Air Surgeon's differing approach to different medications does not render her decision regarding Remeron arbitrary or capricious.*

The Federal Air Surgeon's grant of authorizations for special issuance to individuals treated with different medications does not render her denial of an exemption to Mr. Solondz arbitrary or capricious. The Federal Air Surgeon informed Mr. Solondz that the FAA had recently approved additional medications used to treat anxiety and depression as being permissible for special issuance certificate on a case-by-case basis. R. 27. The Federal Air Surgeon explained that special issuance certification may be appropriate for these medications on a case-by-case basis because the medications were reported to "have a much lower risk of somnolence or sedation than does Remeron." *Id.*

Mr. Solondz argues that the approval on a case-by-case basis of special issuance authorizations for individuals using these additional medications demonstrates that the FAA's approach to Remeron is arbitrary and capricious. Pet'r's Br. at 24-27. On the contrary, approval of special issuance authorizations for individuals prescribed these medications in certain cases demonstrates the FAA's continual review of available treatments and scientific information. As new information

38

has become available showing that these additional medications could be used with certain precautions without endangering public safety, the FAA adjusted its approach to the medications. The FAA's determination that medications that have a lower risk of somnolence or sedation than Remeron pose a lower risk to aviation safety is rational and not arbitrary or capricious.

C. Mr. Solondz failed to establish that an exemption to the medical standards is in the public interest.

Because what Mr. Solondz seeks is an exemption from an FAA medical standard that expressly precludes his certification, the FAA may only grant his request if doing so "is in the public interest." 49 U.S.C. § 44701(f). But Mr. Solondz's brief does not address the public interest and does not even reference the statute that authorizes the FAA to grant him such an exemption. Viewed from the perspective of protecting the public interest, Mr. Solondz is not entitled to an exemption from the FAA's validly-adopted medical standards.

The question posed by Mr. Solondz's request for an exemption is not whether granting him a special issuance first-class certificate is in *his* best interests but, rather, whether granting him such a certificate, despite his admitted medical disqualification, is in the *public* interest.

39

*See Delta Air Lines, Inc.*, 490 F. Supp. at 918 (noting that the Federal Air Surgeon's client is the public, not an individual airman); *Baker*, 917 F.2d at 319 (explaining that public safety must be the dominant and controlling consideration when granting an exemption request). The public includes all individuals who might be exposed to an aircraft that crashes: passengers, crew, and those on the ground. *Delta Air Lines, Inc.*, 490 F. Supp. at 918. The FAA has a particular obligation to protect the public when it comes to commercial flight, and it "should do everything possible to assure the general public that the crew is competent both physically and professionally." *Id.*

As discussed above, the Federal Air Surgeon, relied on her expertise and a review of the available medical records and scientific data, to determine that it was not in the public interest to grant Mr. Solondz an exemption from the FAA's medical standards which would allow him to operate commercial aircraft based on his combination of conditions and use of a medication that is known to have sedative effects. It is the Federal Air Surgeon's aeromedical judgment in this respect that is ultimately entitled to deference. *Cf. FCC v. WNCN Listeners Guild*, 450 U.S. 582, 595–96 (1981) (finding FCC's judgment

40

regarding how the public interest is best served entitled to substantial judicial deference). Determinations as to matters of aeromedical safety are uniquely within the institutional competence of the FAA, and this Court's judgment should not be substituted for that of the agency. *See Island Airlines, Inc. v. Civil Aeronautics Bd.*, 363 F.2d 120, 125 (9th Cir. 1966) (declining to accept petitioner's views of the public interest because although the agency's "views were not the only ones which could reasonably be maintained," the agency did not act arbitrarily); *WAIT Radio*, 459 F.2d at 1207 ("[T]he role of the court is not to determine the public interest, but to determine whether the agency's delineation is contrary to law.").

Because the FAA here has engaged in what amounts to a "rational weighing of competing policies," the Court should not set aside the FAA's decision to deny Mr. Solondz an exemption from the first-class medical standards. *Cf. WNCN Listeners Guild*, 450 U.S. at 595–96 ("The Commission's implementation of the public-interest standard, when based on a rational weighing of competing policies, is not to be set aside by the Court of Appeals").

## <u>CONCLUSION</u>

For all the foregoing reasons, the Federal Air Surgeon's denial of

Mr. Solondz's request for an exemption from the FAA's medical

standards, based on a considered review of the available medical

information, did not constitute an abuse of discretion. Therefore, the

FAA respectfully requests this Court deny Mr. Solondz's petition for

review.

Respectfully submitted,

/s/ *Raymond Carver*

RAYMOND CARVER
Attorney
Federal Aviation Administration
Aviation Litigation Division
800 Independence Ave. SW
Washington, DC 20591
(202) 267-3116

November 20, 2024

42

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,162 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced face with serifs using 14-point font in Century Schoolbook type style.

s/ Raymond Carver
Raymond Carver
Attorney for Respondent
Federal Aviation
Administrations

Dated: November 20, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2024, I electronically filed the foregoing Brief of the Respondent with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Raymond Carver*

Raymond Carver

Dated: November 20, 2024

44

**ADDENDA**

<u>ADDENDA – TABLE OF CONTENTS</u>

| <u>Addendum 1 – Pertinent Statutes</u> | <u>Page</u> |
|---|---|
| 49 U.S.C. § 44701(a), (c), (d), and (f) | 4-5 |
| 49 U.S.C. § 44703(a) | 6 |

<u>Addendum 2 – Pertinent Regulations</u>

| | |
|---|---|
| 14 C.F.R. § 61.23(a) and (d) | 8-9 |
| 14 C.F.R. § 67.401 (a), (c), (d), and (e) | 10-11 |
| 14 C.F.R. § 67.407(a) and (b) | 12-13 |

ADDENDUM 1 - Statutes

United States Code, 2023 Edition
Title 49 - TRANSPORTATION
SUBTITLE VII – AVIATION PROGRAMS
PART A- AIR COMMERCE AND SAFETY
subpart iii - safety
CHAPTER 447 – SAFETY REGULATIONS
SUBCHAPTER IV - ENFORCEMENT AND PENALTIES
Sec. 44701 – General requirements
From the U.S. Government Printing Office, www.gpo.gov

(a) Promoting Safety.—The Administrator of the Federal Aviation Administration shall promote safe flight of civil aircraft in air commerce by prescribing—

(1) minimum standards required in the interest of safety for appliances and for the design, material, construction, quality of work, and performance of aircraft, aircraft engines, and propellers;

(2) regulations and minimum standards in the interest of safety for—

(A) inspecting, servicing, and overhauling aircraft, aircraft engines, propellers, and appliances;

(B) equipment and facilities for, and the timing and manner of, the inspecting, servicing, and overhauling; and

(C) a qualified private person, instead of an officer or employee of the Administration, to examine and report on the inspecting, servicing, and overhauling;

(3) regulations required in the interest of safety for the reserve supply of aircraft, aircraft engines, propellers, appliances, and aircraft fuel and oil, including the reserve supply of fuel and oil carried in flight;

(4) regulations in the interest of safety for the maximum hours or periods of service of airmen and other employees of air carriers; and

A-4

(5) regulations and minimum standards for other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security.

* * *

(c) Reducing and Eliminating Accidents.—The Administrator shall carry out this chapter in a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation. However, the Administrator is not required to give preference either to air transportation or to other air commerce in carrying out this chapter.

(d) Considerations and Classification of Regulations and Standards.— When prescribing a regulation or standard under subsection (a) or (b) of this section or any of sections 44702–44716 of this title, the Administrator shall—

(1) consider—

(A) the duty of an air carrier to provide service with the highest possible degree of safety in the public interest; and

(B) differences between air transportation and other air commerce; and

(2) classify a regulation or standard appropriate to the differences between air transportation and other air commerce.

* * *

(f) Exemptions.—The Administrator may grant an exemption from a requirement of a regulation prescribed under subsection (a) or (b) of this section or any of sections 44702–44716 of this title if the Administrator finds the exemption is in the public interest.

A-5

United States Code, 2023 Edition
Title 49 - TRANSPORTATION
SUBTITLE VII – AVIATION PROGRAMS
PART A- AIR COMMERCE AND SAFETY
subpart iii - safety
CHAPTER 447 – SAFETY REGULATIONS
SUBCHAPTER IV - ENFORCEMENT AND PENALTIES
Sec. 44703 – Airman certificates
From the U.S. Government Printing Office, www.gpo.gov


(a) General.—The Administrator of the Federal Aviation
Administration shall issue an airman certificate to an individual when
the Administrator finds, after investigation, that the individual is
qualified for, and physically able to perform the duties related to, the
position to be authorized by the certificate.


* * *

A-6

ADDENDUM 2 – Regulations

Title 14 - Aeronautics and Space.
CHAPTER I - FEDERAL AVIATION ADMINISTRATION,
DEPARTMENT OF TRANSPORTATION (CONTINUED).
SUBCHAPTER D – AIRMEN.
PART 61 – CERTIFICATION: PILOTS, FLIGHT INSTRUCTORS, AND
GROUND INSTRUCTORS

## § 61.23     Medical certificates: Requirement and duration

*(a) Operations requiring a medical certificate.* Except as provided in
paragraphs (b) and (c) of this section, a person—

(1) Must hold a first-class medical certificate:

(i) When exercising the pilot-in-command privileges of an airline
transport pilot certificate;

(ii) When exercising the second-in-command privileges of an airline
transport pilot certificate in a flag or supplemental operation in part
121 of this chapter that requires three or more pilots; or

(iii) When serving as a required pilot flightcrew member in an operation
conducted under part 121 of this chapter if the pilot has reached his or
her 60th birthday.

(2) Must hold at least a second class medical certificate when exercising:

(i) Second-in-command privileges of an airline transport pilot certificate
in part 121 of this chapter (other than operations specified in paragraph
(a)(1)(ii) of this section);

(ii) Privileges of a commercial pilot certificate in an aircraft other than a
balloon or glider; or

(iii) Except as provided in paragraph (b)(5) of this section, privileges of a
commercial pilot certificate with a balloon class rating for compensation
or hire; or

(3) Must hold at least a third-class medical certificate—

A-8

(i) When exercising the privileges of a private pilot certificate, recreational pilot certificate, or student pilot certificate, except when operating under the conditions and limitations set forth in § 61.113(i);

(ii) When exercising the privileges of a flight instructor certificate and acting as the pilot in command or as a required flightcrew member, except when operating under the conditions and limitations set forth in § 61.113(i);

(iii) When taking a practical test in an aircraft for a recreational pilot, private pilot, commercial pilot, or airline transport pilot certificate, or for a flight instructor certificate, except when operating under the conditions and limitations set forth in § 61.113(i); or

(iv) When performing the duties as an Examiner in an aircraft when administering a practical test or proficiency check for an airman certificate, rating, or authorization.


* * *

Title 14 - Aeronautics and Space.
CHAPTER I - FEDERAL AVIATION ADMINISTRATION,
DEPARTMENT OF TRANSPORTATION (CONTINUED).
SUBCHAPTER D - AIRMEN.
PART 67 - MEDICAL STNADARDS AND CERTIFIATION
Subpart E - Certification Procedures

## § 67.401    Special issuance of medical certificates

(a) At the discretion of the Federal Air Surgeon, an Authorization for
Special Issuance of a Medical Certificate (Authorization), valid for a
specified period, may be granted to a person who does not meet the
provisions of subparts B, C, or D of this part if the person shows to the
satisfaction of the Federal Air Surgeon that the duties authorized by
the class of medical certificate applied for can be performed without
endangering public safety during the period in which the Authorization
would be in force. The Federal Air Surgeon may authorize a special
medical flight test, practical test, or medical evaluation for this purpose.
A medical certificate of the appropriate class may be issued to a person
who does not meet the provisions of subparts B, C, or D of this part if
that person possesses a valid Authorization and is otherwise eligible.
An airman medical certificate issued in accordance with this section
shall expire no later than the end of the validity period or upon the
withdrawal of the Authorization upon which it is based. At the end of
its specified validity period, for grant of a new Authorization, the person
must again show to the satisfaction of the Federal Air Surgeon that the
duties authorized by the class of medical certificate applied for can be
performed without endangering public safety during the period in which
the Authorization would be in force.

* * *

(c) In granting an Authorization or SODA, the Federal Air Surgeon may
consider the person's operational experience and any medical facts that

may affect the ability of the person to perform airman duties including—

(1) The combined effect on the person of failure to meet more than one requirement of this part; and

(2) The prognosis derived from professional consideration of all available information regarding the person.

(d) In granting an Authorization or SODA under this section, the Federal Air Surgeon specifies the class of medical certificate authorized to be issued and may do any or all of the following:

(1) Limit the duration of an Authorization;

(2) Condition the granting of a new Authorization on the results of subsequent medical tests, examinations, or evaluations;

(3) State on the Authorization or SODA, and any medical certificate based upon it, any operational limitation needed for safety; or

(4) Condition the continued effect of an Authorization or SODA, and any second- or third-class medical certificate based upon it, on compliance with a statement of functional limitations issued to the person in coordination with the Director of Flight Standards or the Director's designee.

(e) In determining whether an Authorization or SODA should be granted to an applicant for a third-class medical certificate, the Federal Air Surgeon considers the freedom of an airman, exercising the privileges of a private pilot certificate, to accept reasonable risks to his or her person and property that are not acceptable in the exercise of commercial or airline transport pilot privileges, and, at the same time, considers the need to protect the safety of persons and property in other aircraft and on the ground.

* * *

A-11

Title 14 - Aeronautics and Space.
CHAPTER I - FEDERAL AVIATION ADMINISTRATION,
DEPARTMENT OF TRANSPORTATION (CONTINUED).
SUBCHAPTER D - AIRMEN.
PART 67 - MEDICAL STNADARDS AND CERTIFIATION
Subpart E - Certification Procedures

## § 67.407   Delegation of authority

(a) The authority of the Administrator under 49 U.S.C. 44703 to issue or deny medical certificates is delegated to the Federal Air Surgeon to the extent necessary to—

(1) Examine applicants for and holders of medical certificates to determine whether they meet applicable medical standards; and

(2) Issue, renew, and deny medical certificates, and issue, renew, deny, and withdraw Authorizations for Special Issuance of a Medical Certificate and Statements of Demonstrated Ability to a person based upon meeting or failing to meet applicable medical standards.

(b) Subject to limitations in this chapter, the delegated functions of the Federal Air Surgeon to examine applicants for and holders of medical certificates for compliance with applicable medical standards and to issue, renew, and deny medical certificates are also delegated to aviation medical examiners and to authorized representatives of the Federal Air Surgeon within the FAA.

(c) The authority of the Administrator under 49 U.S.C. 44702, to reconsider the action of an aviation medical examiner is delegated to the Federal Air Surgeon; the Manager, Aeromedical Certification Division; and each Regional Flight Surgeon. Where the person does not meet the standards of §§ 67.107(b)(3) and (c), 67.109(b), 67.113(b) and (c), 67.207(b)(3) and (c), 67.209(b), 67.213(b) and (c), 67.307(b)(3) and (c), 67.309(b), or 67.313(b) and (c), any action taken under this paragraph other than by the Federal Air Surgeon is subject to reconsideration by the Federal Air Surgeon. A certificate issued by an aviation medical examiner is considered to be affirmed as issued unless an FAA official

named in this paragraph (authorized official) reverses that issuance within 60 days after the date of issuance. However, if within 60 days after the date of issuance an authorized official requests the certificate holder to submit additional medical information, an authorized official may reverse the issuance within 60 days after receipt of the requested information.

(d) The authority of the Administrator under 49 U.S.C. 44709 to re-examine any civil airman to the extent necessary to determine an airman's qualification to continue to hold an airman medical certificate, is delegated to the Federal Air Surgeon and his or her authorized representatives within the FAA.